Good morning, Camille Fenton, Federal Defenders, on behalf of Mr. Campos. I plan to reserve two minutes for rebuttal and I'll keep an eye on the clock. Okay. And is a versatile word that can be read just disjunctively. Just as in Pulsifer, a disjunctive reading of section 1326 a 2b is more reasonable because it does not reward more serious immigration history. Could you tell me what, in your view, is the purpose of that affirmative defense? The purpose of that affirmative defense, it's, well, I would argue it's an exception to prosecution, but it's built into the statute to lessen the penalty for somebody who has remained out of the country for the requisite advance consent time period. So it doesn't mean they won't be prosecuted. It just simply means they are spared from the felony. They can still be prosecuted under section 1325, the misdemeanor. What's your best case or evidence that section 1182 modifies 1326a, the advance consent requirement? 1182 seems to relate only to visa applications. So help me with that, please. So I would, if I had to choose a best case, I would argue that Pulsifer is the best case. I think it's clear that the advance consent time periods apply to section 1326 for three reasons. The first is that if they didn't interact, more than half of the statutory language in section 1326 would be nullified. The second is that the plain language of 1326a to b specifically says, under this chapter or any prior act. And third, the INA was a unified effort by Congress to combine all civil and criminal rules regarding immigration. Section 1182 and 1326 appear in the same chapter. And the reason Pulsifer, I think, is the best case is there's an analogy that can be drawn. So in Pulsifer, the Supreme Court discusses that if Pulsifer's interpretation of the safety valve provision were correct, and all three criteria had to be met, that would render all of the language in one of the subparagraphs, subparagraph a, superfluous. As you know, one of our subparagraphs, your circuit has some case law that interprets 1182's effect on 1326, which is different than what you're advocating. Why should we ignore the reasoning of that case? So those, the out of circuit cases are all pre Pulsifer, and I don't think considered what the Supreme Court had to say in that case. Do you think Pulsifer, in effect, overrides the reasoning? Of those three out of circuit cases, yes. But doesn't Pulsifer say that and is, of course, disjunctive? I mean, isn't that a direct quote from the case? It says, and, I think everyone agreed and means and, so that it was conjunctive. Then it says, of course, and is disjunctive, but then goes on to apply an implied distribution theory to say that the word and would then apply to each of the three things in the list that followed. I didn't see any argument in your brief that tried to apply this implied distribution theory to this statute. Yes, I think the structures are different. Where they are similar is the reasoning. Again, I think the situation is similar where when you have a statute that reasonably, that grammatically speaking, can be read two different ways, that's when courts need to look beyond the meaning of the word and to the words that surround and in deciding what is the more reasonable interpretation. Is Pulsifer the only case that has taken that approach with the word as common as and? I mean, can you point to other case law where courts have said, well, and, of course, doesn't mean and, it means or? I think in Alaska versus Liang, there's there the Supreme Court... Sorry, the Ninth Circuit read and to mean or and made more sense that it was disjunctive. So if and means or in 1326, are there any aliens who would be unable to invoke this exception or a defense? Because it seems like it covers everybody. You've been removed or you've been denied admission. Pretty much everybody would be eligible for this defense, right? The vast majority of people would not be eligible for this defense. Why not? If and means or, right? And it applies to someone who's either previously been denied admission or somebody who's been removed. They still have to remain out of the country for the requisite advanced consent time period. That could be five, 10, even 20 years. Some people, it's life, right, if they have an aggravated felony. So it's not opening the door to everyone making use of this exception. It's very rare to have someone that fits this description. Most people return and are being prosecuted under 1326 repeatedly and have not waited out the advanced consent time period. And again, though, even if you have some of those people, they are not immune from prosecution. They will just simply be prosecuted under the misdemeanor. If we were to view this as conjunctive, what's your position on whether Mr. Campos has actually been denied or denied admission or removed? In other words, I think you were looking at 2011, 2022 were instances of denied admission. So, sorry, can you rephrase the question? As I understand the record, he was admitted in 1990 when he obtained LPR status and then there was instances in 2011 and 2022. Was he denied admission in those instances? I believe ultimately after his criminal conviction, he was placed in removal proceedings before an immigration judge and removed. So turning back to PULSIFER briefly, it says that and is versatile. And it's essential to look to the words surrounding and where you have a statute that can, grammatically speaking, be read multiple ways. And here, it's unreasonable to read and to give an extra defense to someone who has violated immigration laws twice and not once. Because in the situation where both of those things have to happen, we're giving this exception to somebody who, for instance, walks up to the border, pre IRA was excluded, now is denied admission. Subsequent to being told, no, you can't come in, comes in and is later arrested or somehow on notice of immigration authorities, placed in a removal proceeding and removed versus giving this exception to somebody who has only ever had one of those things happen. I'm troubled by one other thing. It seems like you're asking us to construe a civil statute as modifying a criminal statute. Your response to that? The INA was drafted to unify all of the criminal and civil immigration rules and laws. From your perspective, that's not a big deal, because that's what the INA did anyway. Well, I think this 1326, the criminal statute specifically directs us to look to the other immigration laws with, again, the language under this chapter. But would you agree that normally it would be unusual for a state with only civil consequences to modify a criminal statute? Normally, but I think immigration law is unique in that way. I think the immigration criminal statutes and immigration civil... There's a lot of crossover between the two, so I think it's specific to immigration law. Can I save the balance of your time? Thank you. Very well. So we're gonna hear now from Mr... Is it Zip? Yes. May it please the court, Daniel Zip on behalf of the United States. Your Honor, the plain language of 1326 A to B is conjunctive. It applies only to defendants who have been denied admission and removed. As the Supreme Court held in Pulsiver, the common ordinary understanding of the word and is and. It's conjunctive and it joins. The district court in this case properly gave and that meaning and denied the motion for judgment of acquittal. There's nothing in the context of the statute that would support rewriting it to mean... To say or instead of and. In fact, the overall context of the statute, which is in the same subsection, Congress wrote denied admission or removed when listing the requirements for prosecution. I have this question. The statute seems to protect people who are both removed and denied admission, and yet it punishes those who only meet one of those criteria. Isn't that kind of an absurd result? It's not an absurd result, Your Honor. I agree that the statute is inartful and it's hard to understand exactly what the purpose of that defense was and why they drafted it that way. But what this court made clear in Lopez and in Lucerno is in order to rewrite a statute under the absurdity doctrine is an extremely high bar to meet. It has to be not deciding what Congress meant or that there would be a better way of writing it. It has to be quite impossible that Congress meant what it said, and it's so absurd that it would shock the general moral and common sense. Here, the examples of certain aliens being eligible, others not, based on complex interplay between when they were deported or removed and when they were turned away at the border, simply doesn't rise to that level. As you heard, your opposing counsel makes reference to Pulsifer. What's the government's response to her argument? I think our primary response, as Your Honor noted, is that the main holding in Pulsifer was that and means and, and that that holding should apply here too. The idea in Pulsifer that there was a way of reading that would have rendered a section of the statute superfluous, that doesn't exist in the same way here. There's nothing that reading the word and here would render superfluous in the statute that would support it in the same way that it did in there. So from your perspective, the Supreme Court's further discussion of just mental gargling and all that counts, is that and means and? Is that basically where you're coming down? Not exactly, Your Honor. I think the Court made it clear that and means and, and you have to look at the overall context of the statute to determine, to sort of confirm that fact. Here, in that statute, there was a number of different canons of statutory interpretation that cut both ways, and obviously divided circuits across the country as to how to interpret the word and. This statute is... There's very little going on here that would support sort of reading and to mean or. You have the overall context, as I mentioned, where the Court has used or in the very same subsection. In Palomar, Santiago, the Supreme Court made clear that and in 1326D is also conjunctive. But beyond that, there's very little here that would support rewriting the statute when there was canons like that in Pulsifer. You said it's hard to understand the purpose for this provision. That was my very first question to your opposing counsel. Would you take a shot at helping us understand the purpose of this provision? Sure, as best I can understand it. So the 1182 is sort of a civil statute for acquiring visas. And anyone who comes to the country has to get some sort of permission to come in, whether it's a visa or border crossing card or just arriving at the port and showing your passport. What 1182 does is add a second layer for people who have been removed from the country. For them to come in legally, they have to, step one, apply to the Attorney General for permission to apply, and then step two, actually apply for admission. So as I read the statute, this would apply to people who have been removed, who then either have acquired that first step permission to reapply or are no longer required to go to that first step because 5, 10 years or 20 years have passed. And then they come to the port of entry and apply for entry. And in that situation, someone conceivably could be guilty of 1326 for just coming to the port and attempting to reenter. But if they had gone through that first step, then they wouldn't be guilty in that situation. That's my best understanding, although it's admittedly not clearer. So at the end of the day, Your Honor, there's really not that much in the statute that would support going beyond the plain language. And this is one of the cases, as the court held in Lopez, that sometimes you begin with the statutory text and end there if the statute's language is clear. Here, the statute clearly says, denied admission and removed. And Mr. Campos was only removed, and the district court properly denied his... And he really can't attack the earlier removal order at this time. He was advised multiple times of his right to appeal after the order was entered. The court asked, do you accept that decision as final or do you want to appeal? And he said, I'll take that as final. That sort of ends the 1326D. And he also hasn't shown that it was plausible that he would have received relief, both because of the nature of his conviction, which, as we now know, was an aggravated felony under Draper. So you rely on Gutierrez Alba, which interpreted a prior version of this statute. Why should we think, when Congress amended the statute, that they had Gutierrez Alba in mind, or that there was a consensus among the courts as to what the prior statute meant? I don't think that's our position. Gutierrez Alba... Essentially, the defense is arguing that we should read the current statute in the disjunctive, because it would have been impossible to imagine that the old statute would have been conjunctive. And our response to that is, one, no, it's not, because it would have been possible to be both removed... Or both deported and excluded at different times. And two, even under that old language in Gutierrez Alba, this court held that that and is conjunctive. So that earlier version simply doesn't support the idea that the modern version must be read in the disjunctive. So if I understand your response, the government is not arguing that we should interpret the current version of the statute based on the prior version, even with the case out there saying and meant and. Yes, that's correct. It's more... It undercuts the defense argument that that somehow, in context, means that we should read the current one disjunctively. So I know we've touched on this a few times, but your opposing counsel was arguing that this seems illogical because somebody with more wrongful conduct would be protected if and means and, and somebody with lesser conduct would not be protected. I've been running in my mind how many different ways this could apply. It is so, so many different variations of how people enter the country or tried into the country or removed from the country. Are you agreeing that with the defense that that's correct, that the statute makes it more difficult for people with less wrongful conduct to receive the benefit? No, Your Honor. I think there are rational reasons why Congress would have set it up this way. One of them would be a defendant in this situation who has been removed from the country, that Congress would want to sort of reward an attempt to at least try to work within the immigration system to come back, even if he was then denied admission, that that's better than someone who is removed once and has never denied admission. That's a slightly different answer than I understood to my question. I thought what you said was, it may seem a little absurd, but the absurdity standard is so high that it's not met here. Is that what you're saying? What you're saying to judge doesn't seem to be the same to me. I was trying to answer a question. Ultimately, our fundamental point is it doesn't matter whether it slightly benefits people who are more culpable or less culpable, because under the statute, it has to be so absurd to shock the conscience. It has to be irrational. Irrational, right. You made an interesting point that I hadn't thought of. Being denied admission is not necessarily culpable. You attempted to enter the country legally, you requested permission, were denied, but then the culpability comes in if you enter the country in any event, come in otherwise. That's correct. In addition, Congress could have wanted to offer relief or to deny relief to people like Mr. Campos, who have only been removed, which means they would have been admitted at some earlier point and would have lost that status, which would normally require some sort of criminal conviction or something aggravated. So there are reasons why Congress would have written it both ways. But again, at the end of the day, under the absurdity canon, this court can only rewrite and to mean or if it is quite impossible that Congress meant what it said, and that's not true. Your time is up. Let me ask my colleagues, do either have additional questions? I think not. Thank you, Mr. Zipp. So, please, you've got some time left, Ms. Fenton. Thank you. I want to begin by addressing the absurdity doctrine, and I want to just make it clear that this court doesn't need to find and is disjunctive under that doctrine. It doesn't need to rise to the level of absurdity because of Pulsifer. Simply under Pulsifer, if this court finds that Mr. Campos's reading of the statute where and is disjunctive is more reasonable and makes more sense given the consequences we've talked about, that that's enough. It doesn't need to rise to an absurdity level. Again, here, it's unreasonable to read and any other way because, again, it gives an extra defense to someone who has and not simply wants. And then I also want to briefly address the government mentioned the canon of common understanding. I think Pulsifer made it very clear that with a word like and, that doesn't move the needle. It underscores that the presumption of consistent usage and the meaningful variation canon both relied on the government can only apply to words with some heft and distinctiveness, and that's not and. And I also wanted to address Gutierrez-Alba briefly. I would argue the government stated that that was a holding. That was not a holding in Gutierrez-Alba. That was merely dicta. Section 1326a to b wasn't even at issue with the court below the Ninth Circuit. And then with regard, and I think I also just want to mention a hypothetical from Pulsifer that I think is helpful for this analysis. In Pulsifer, the Supreme Court talks about Article III and gives an example where all the different situations where federal jurisdiction arises. And it explains, you know, the sentence would be federal jurisdiction arises under, one, the Constitution, the laws of the United States, two, and three, treaties. And there's an and in there. But the Supreme Court said this doesn't limit jurisdiction to a case that has all three. It doesn't make sense, right? It's more reasonable to interpret it to any of the three. Your time is up. Let me ask, do my colleagues have additional questions? We thank both counsel for your argument. In this case, the case of United States v. Campos is submitted.
judges: SMITH, BADE, Fitzwater